UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRYE PRECISION LLC,

               Plaintiff,

     v.

CONCEALED CARRIER, LLC d/b/a
TACTICON ARMAMENT, a California
Limited Liability Company,


               Defendant.

C.A. No. _____

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff Crye Precision LLC ("Crye"), a New York Limited Liability Company, for its Complaint against Defendant Concealed Carrier, LLC d/b/a Tacticon Armament ("Tacticon") alleges, on knowledge as to itself and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.     Crye has been forced to bring this action for an injunction, damages, and other appropriate relief arising from Tacticon's creation, importation, distribution, advertisement, offering for sale, and/or sale of counterfeit products to consumers in this District, primarily through online marketplaces, bearing virtually identical reproductions of Crye's copyrighted, renowned MultiCam® and MultiCam® Black brand camouflage designs. Indeed, Tacticon prominently markets and/or advertises its products with Crye's MultiCam® trademark to trade on the goodwill Crye has built over the last nearly two decades and falsely associates its counterfeit products for genuine MultiCam® products.

2.     Tacticon advertises, promotes, and sells its products in this District at prices substantially below the normal market price for genuine MultiCam® products. In so doing,

Tacticon undercuts sales of authorized and legitimate MultiCam® products bearing Crye's copyrighted camouflage designs. Many of the products sold by Tacticon are low-quality counterfeits of genuine MultiCam® products, resulting in substantial damage to Crye's reputation.

3.      MultiCam® was developed by Crye and is intended for application onto fabric and other substrates.

4.      MultiCam® is widely recognized as the most successful military camouflage design ever created, with MultiCam® (or one of its derivative variants) having been adopted for use by all or portions of the armed forces of many countries, including, but not limited to the United States, Canada, the United Kingdom, the Netherlands, Poland, Belgium, Denmark, Australia, New Zealand, Peru, Chile, Israel and many others.

5.      Additionally, MultiCam® has become a global commercial success, with countless well-known commercial clothing and other consumer brands having partnered with Crye to sell authorized and authentic MultiCam® products not intended for military use.

6.      Without Crye's authorization or consent, Tacticon manufactures, advertises, markets, and/or sells products ("Infringing Products") bearing camouflage patterns (the "Infringing Patterns") that are virtually indistinguishable from MultiCam® and/or MultiCam® Black. In addition, Tacticon is violating Crye's rights to the MultiCam® trademark by using the words "Multicam" (the "Counterfeit Mark") in connection with its offering of Infringing Products bearing the Infringing Patterns. As such, the use of the Counterfeit Marks in connection with the advertisement and/or sale of Infringing Products bearing the Infringing Patterns is likely to lead to consumer confusion as to the origin of the products associated with the Marks. In addition, Tacticon's use of the Counterfeit Mark in connection with the marketing and advertising of Infringing Products bearing the Infringing Patterns is being done with the intent to trade on the

2

goodwill associated with the MultiCam® trademark and the renowned MultiCam® and MultiCam® Black camouflage designs.

## PARTIES

7.      Plaintiff Crye Precision LLC is a New York limited liability company with its principal place of business in Brooklyn, New York.

8.      Crye is a design and manufacturing firm specializing in the production of high-quality military and police uniforms and equipment. Crye has had significant success since its formation more than twenty years ago and is the proud supplier of military equipment and uniforms to most of the United States Special Operations, to the Armed Forces of NATO Countries, and to the elite special units of many European and other countries around the globe. Crye also outfits members of many federal agencies, including (at least) the FBI, CIA, DEA, State Department, Federal Marshals, Federal Air Marshals. Crye's garments and equipment additionally protect the members of dozens of police departments around the country (including, notably, the New York Police Department's Emergency Services Unit, Bomb Squad Unit, Counterterrorism Unit, and others), as well as the New York State Police Special Operations Response Team (SORT).

9.      On information and belief, Defendant Concealed Carrier, LLC d/b/a Tacticon Armament was and is a California Limited Liability Company with its principal place of business at 11315 Sunrise Gold Cir., Suite F, Rancho Cordova, California 95742.

10.     On information and belief, Tacticon targets its business activities, including the sale of Infringing Products, toward consumers throughout the United States, including within this District, and conducts pervasive business through the operation of at least one fully interactive commercial Internet based e-commerce website, https://tacticon.com/shop/, and its Amazon

storefront.[1]

11.    On information and belief, Tacticon directly engages in unfair competition with Crye by, *inter alia*, advertising, offering for sale and selling goods bearing and/or using Crye's federally registered copyright and trademark rights through at least Tacticon's website and Amazon storefront, and any additional domain names, websites and corresponding website URLs not yet known to Crye. Tacticon has purposefully directed some portion of their illegal activities towards consumers in New York through the advertisement, offer to sell, sale, and/or shipment of Infringing Products in New York.

## **JURISDICTION AND VENUE**

12.    This Court has personal jurisdiction over Tacticon in this District because Tacticon has committed acts of copyright infringement within this State and in this District and have committed acts of copyright infringement outside the State, which caused injury to Crye within the State. Tacticon expected and should reasonably have expected such acts to have consequences in this State, and Tacticon derives substantial revenue from interstate or international commerce. Tacticon has advertised, distributed, and/or offered to distribute over the Internet through at least its website and Amazon storefront, including in this District, unauthorized infringing products bearing Crye's copyrighted MultiCam® designs and unauthorized use of the Marks in the

---

[1] https://www.amazon.com/stores/page/9B196076-8F89-4E0E-B171-81AE0A32C559/?_encoding=UTF8&store_ref=SB_A027501476FXBPP2W2H&pd_rd_plhdr=t&aaxitk=114782b0dfbd109d4db7810c29a88f68&hsa_cr_id=3675686430501&lp_asins=B08FFC82V3%2CB08FFBQ8LY%2CB08FFB78GD&lp_query=tacticon&lp_slot=auto-sparkle-hsa-tetris&ref_=sbx_be_s_sparkle_mcd_logo&pd_rd_w=Jbgpj&content-id=amzn1.sym.7dd77237-72be-4809-b5b5-d553eab7ad9d%3Aamzn1.sym.7dd77237-72be-4809-b5b5-d553eab7ad9d&pf_rd_p=7dd77237-72be-4809-b5b5-d553eab7ad9d&pf_rd_r=0ADR7C0X88SG9EG55D7S&pd_rd_wg=12ssa&pd_rd_r=89c2f6e1-f427-4167-aa77-bec620ed3a93.

marketing, advertisement, and sale of its counterfeit products. Tacticon's actions have caused injury to Crye within this District.

13.     Personal jurisdiction exists over Tacticon under at least New York's long-arm statute, New York Civil Practice Law and Rules § 302. For example, Tacticon operates one or more interactive websites accessible in New York, through which it infringes Crye's copyrights by displaying infringing products bearing unauthorized copies of Crye's copyrighted MultiCam® designs, and, on information and belief, through which it sells, offers to sell, or has sold to customers in the United States, including in New York, those same infringing products. As an additional example, personal jurisdiction also exists over Tacticon because Tacticon has committed tortious acts of intellectual property infringement outside New York State through at least the sale, marketing, advertisement, or offer for sale of Infringing Products bearing the Infringing Patterns, which have caused and continues to cause injury to Crye within the State.

14.     This action arises under, *inter alia*, the Copyright Act and the Lanham Act. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. In addition, because there is diversity of citizenship between the parties to this action and the matter in controversy exceeds $75,000, the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Crye's claims occurred in this District.

## BACKGROUND FACTS

I.      **The MultiCam® Designs**

16.     In the early 2000s, Crye's principals developed a camouflage design known as

5

MultiCam®:



17.     MultiCam® was created with the hope that the United States Army would select MultiCam® and begin to use it on uniforms worn by US Soldiers. The creators of MultiCam® knew that in order to accomplish this goal, the design would not only need to be effective at concealing the wearer, but, in addition, it would need to be aesthetically desirable for the US Army.

18.     Insofar as the design needed to be effective at concealing the wearer, this was able to be done without meaningfully constraining or limiting the non-functional and creative choices the creators had in creating the design. In fact, very little of MultiCam®'s ultimate appearance is a consequence of the creators having had to adhere to any functional requirements. Accordingly, although in designing MultiCam® certain functional concerns had to be considered, those concerns did not substantially dictate the final appearance of MultiCam®. There are countless other patterns already in existence (and countless more that could still be created) which also accomplish the functional objective of effective concealment, but look nothing like MultiCam®, or like one another.

19.     Instead, the appearance of the MultiCam® design is overwhelmingly the product of aesthetic decisions made by its authors to increase the chances that the US Army would adopt the design. Specifically, the goals were to ensure that the design would be visually attractive,

reflect the national pride of the United States, and be distinct in appearance from all other camouflage patterns (including those worn by the armed forces of other countries).

20.     To accomplish these aesthetic objectives, the authors (i) hand-drew each and every one of the more than one-hundred unique shapes found in the design (no pre-formed shapes were used); (ii) arranged for the placement of those shapes in the design; (iii) decided how to group those shapes together in the design; (iv) made creative choices to 'layer' certain shapes and portions of the design over one another; and (v) selected the multiple and very specific complementary colors they wanted for the design.

21.     In sum, the ultimate appearance of MultiCam® is nearly entirely the product of a significant number of creative choices by its creators. The creative choices made when selecting a color palette, creating the shapes, choosing the placement of the shapes, and deciding how to group and layer the shapes over one another exhibit much more than a minimal amount of creativity and originality.

22.     The artistic, creative nature of the MultiCam® design has been recognized by multiple museums that have displayed and included the artwork in their collections, including the Museum of Modern Art (MoMA) in New York, which maintains the MultiCam® design in its permanent art collection.

23.     Crye has also developed several versions of MultiCam® containing the same aesthetic design choices, but with different color palettes to optimize its performance across different surroundings. One of these versions, called MultiCam® Black, was made to meet the unique requirements of law enforcement officers operating in high-risk environments. MultiCam® Black is designed to complement an officer's existing equipment and present a sharp, professional image for top-tier law enforcement units. A copy of a photograph of MultiCam® Black printed on

fabric is attached hereto as **Exhibit A**.

24.     The MultiCam® brand has attained tremendous success around the globe, both as a military and commercial camouflage brand.

25.     In the United States, MultiCam® has been the camouflage of choice for US Special Operations for nearly two decades, and, in 2010, MultiCam® was chosen as the standard issue camouflage for every US soldier being deployed to Afghanistan and was renamed "Operational Enduring Freedom Camouflage Pattern", or "OCP", by the U.S. Government.

26.     Since being adopted by Special Forces in 2006 and then named an official Army camouflage pattern in 2010, MultiCam® has generated enormous goodwill for Crye among the military generally, and soldiers in particular. Tens of millions of yards of fabric bearing MultiCam® have been sold for use in military apparel and equipment, and MultiCam®'s popularity has generated sales of tens of millions of yards of fabric to the military.

27.      MultiCam®'s popularity also has created for Crye many opportunities for high profile commercial brand exposure outside of the military, including in fashion, film, and sports. MultiCam® has been printed on millions of yards of fabric, as well as other substrates, for commercial sales, which include MultiCam® apparel and other products worn as fashion items outside the military and which are not intended to conceal their wearer. For example, MultiCam® has found its way into the commercial product lines of companies such as Nike, Oakley, Supreme, Reebok, Billabong, North Face, Vans, CamelBak, Arc'Teryx, Under Armour, and many others. The global marketplace contains thousands of products decorated in MultiCam® which are intended and used entirely for commercial, non-military use, such as coffee mugs, neck ties, dress suits, skateboards, flip flops, teddy bears, skate shoes and more.

28.     Popular artists and figures, including Pharrell Williams, Drake, Post Malone and

many others wear clothing with the MultiCam® design in their music videos, photoshoots, award shows, and at other events; the makers of the immensely popular Call of Duty and Battlefield video games have dressed their characters in MultiCam®; characters in blockbuster films, including American Sniper, G.I. Joe, Transformers, World War Z, The Avengers, and Dark Knight Rises, wear MultiCam®; celebrity-famous fashion label Rag & Bone designed a collection of MultiCam® pieces; professional sports teams have worn the MultiCam® design on their jerseys; and MultiCam® has been applied on the body of a tribute car raced in NASCAR® events. In all these cases, MultiCam® was selected and used for its aesthetic attractiveness, and not for any concealment functionality.

## II.     Crye's Intellectual Property Rights at Issue

### a.     Crye's Copyrights to the MultiCam® Designs

29.     The MultiCam® design was duly registered with the United States Copyright Office and was given Registration No. VA 1-942-951) (the "'951 Registration"). A true and correct copy of the '951 Registration is attached hereto as **Exhibit B**.

30.     The MultiCam® Black design was separately registered with the United States Copyright Office and was given Registration No. VA 1-902-826 (the "'826 Registration"). A true and correct copy of the '826 Registration is attached hereto as **Exhibit C**.[2]

31.     Crye owns or controls the copyright and/or the relevant exclusive rights in the Works under U.S. copyright laws.[3]

---

[2] The registered MultiCam® and MultiCam® Black designs are collectively referred to as the "Works."

[3] Crye's sister company, Lineweight LLC, owns the copyright in and to the designs. Crye, in turn, has an exclusive license to those copyrights. Accordingly, Crye is a legal or beneficial owner of the relevant exclusive rights under the copyright, and has standing to maintain this action.

32.     The Works constitute copyrightable subject matter under the laws of the United States.

**b.      The MultiCam® Marks**

33.     Crye owns and controls the following trademark registrations for MultiCam® with the USPTO, which it uses to market the copyrighted MultiCam® designs. True and correct copies of the registration certificates for these marks are attached hereto as **Exhibit D**. A true and correct copy of the assignment of these marks to Crye is attached hereto as assignment to **Exhibit E**.

| Mark | Registration Number | Filing Date | Status |
|------|--------------------|-------------|--------|
| MULTICAM | 4,443,275 (the "'275 Registration") | Apr. 12, 2013 | Incontestable |
| MULTICAM | 4,737,503 (the "'503 Registration") | Jan. 9, 2014 | Incontestable |

34.     Crye's registrations referenced above are valid and subsisting, in full force and effect, and constitute prima facie and/or conclusive evidence of Crye's exclusive right to use the marks in commerce in the United States in connection with the goods and/or services specified in the registrations.

35.     Additionally, the Marks are incontestable pursuant to the provisions of 15 U.S.C. § 1065, and therefore constitutes conclusive evidence of the validity of those registrations.

**III.     Tacticon's Unlawful Conduct**

36.     Tacticon is involved in manufacturing, importing, distributing, creating, advertising, selling, and/or offering for sale Infringing Products, bearing the Infringing Patterns, sold and offered for sale under the Counterfeit Mark.

37.     One of the Infringing Patterns (the "MultiCam Infringing Pattern") was made to look seemingly identical to MultiCam®. To demonstrate this, Crye submits **Exhibit F**, which first highlights the vast amount of creative space available when designing unique camouflage patterns and, in turn, the lack thereof in Tacticon's MultiCam Infringing Pattern.

38.     The Infringing Products made in the MultiCam Infringing Pattern and sold in this State have been obtained and analyzed by Crye, through lawful means. Attached as **Exhibit G** is a comparison of Crye's genuine MultiCam® design and the Infringing Products bearing the MultiCam Infringing Pattern. As can be seen, a large number of individual, arbitrary, creative shapes in the MultiCam Infringing Pattern, found on the Infringing Products, are ***virtually identical*** to corresponding shapes in the genuine MultiCam® design. Moreover, the MultiCam Infringing Pattern as a whole, including the color palette and gradients, and the shapes and their grouping, layering and overall placement, is ***virtually identical*** to the genuine MultiCam® design. There are thousands of highly unique camouflage patterns available that do not look substantially similar, let alone virtually identical, to MultiCam®. But Tacticon chose not to use any of those non-infringing camouflage patterns for its products; rather, Tacticon chose to violate Crye's MultiCam® copyrights.

39.     Moreover, Tacticon has manufactured, imported, distributed, created, advertised, sold, and/or offered for sale, through its website and other means, Infringing Products bearing an Infringing Pattern ***virtually identical*** to Crye's copyrighted MultiCam® Black design.

40.     Crye has not authorized Tacticon to reproduce or distribute Infringing Products bearing the Infringing Patterns. Thus, Tacticon has infringed, and continues to infringe, Crye's copyright in the Works.

41.     In addition, Tacticon advertises and markets the Infringing Products on its website and/or Amazon storefront using the Counterfeit Mark and describes the Infringing Products as coming in a "Multicam" or "Multicam Black" color, as shown below:



[https://tacticon.com/product/battlepack-tactical-backpack-1-to-3-day-assault-expandable-pack/](https://tacticon.com/product/battlepack-tactical-backpack-1-to-3-day-assault-expandable-pack/)

BODY ARMOR / BACKPACK ARMOR

## BattlePack Buildout | Backpack & Armor Plate

**From:** ~~$79.95~~ **$75.95**

or 4 interest-free payments of **$18.99** with ● sezzle ⓘ

Our 24BattlePack is one of our best selling and most highly reviewed products we manufacture. The Tacticon 3 day assault backpack was built on diligent research to determine what customers love in their assault packs, but more importantly, what they didn't want in an assault pack. We did away with all the fluff and produced an incredibly high-quality tactical assault pack that boasts a no questions asked 1-year warranty.



1 to 3 Day Tactical Backpack | Expandable 40L Assault Pack | BattlePack

Colors *

Multicam Black

CLEAR

~~$79.95~~ $75.95
or 4 interest-free payments of **$18.99** with ● sezzle ⓘ

109 in stock



[https://tacticon.com/product/battlepack-tactical-backpack-1-to-3-day-assault-expandable-pack/](https://tacticon.com/product/battlepack-tactical-backpack-1-to-3-day-assault-expandable-pack/)

42.     Tacticon's unauthorized use of the Counterfeit Mark in its marketing, advertising, offering for sale, and/or selling its Infringing Products infringes the Marks. Tacticon's use of "Multicam" and "Multicam Black" in connection with its advertising and sale of camouflage products, *especially* insofar as they bear the Infringing Patterns, is likely to cause consumer confusion, including confusion as to the origin of these Infringing Products.

43.     Examples of Tacticon's use of the Counterfeit Mark in connection with the advertisement and sale of products containing the Infringing Patterns are provided above.

44.     Crye has suffered and will continue to suffer serious injury due to Tacticon's infringement. For example, Tacticon sells its knockoff products for prices well below the price of genuine MultiCam® products. A comparison of the price for one of the Infringing Products and a genuine MultiCam® product is provided below.



| Genuine MultiCam® Product |
|---|

**MULTICAM® URBAN WARFARE – 36"/42"/46"/51"/55"**

SAV-RB-5512DG-VER2-MCOG

$249.99

COLOR — MultiCam

SIZE
36" 42" 46" 51" 55"

| Infringing Product |
|---|



45.     Tacticon's importation, distribution, marketing, advertising and sale of Infringing Products, bearing Infringing Patterns, has caused and will continue to cause irreparable injury to the reputation and goodwill of Crye and its brand, while Tacticon benefits from the labor and intellectual capital that Crye invested in the creation of its products and designs.

46.     Moreover, Tacticon's Infringing Products are of low quality and do not meet the rigorous specifications that Crye ensures all products bearing the MultiCam® designs meet. Examples of complaints about Tacticon's low-quality products are provided below:

 

by Tacticon

Color: Camo   |   Change



## FIRST CLAIM FOR RELIEF
### (Copyright Infringement in Violation of the Copyright Act, 17 U.S.C. § 501)

47.     Crye realleges and incorporates herein the allegations set forth in the preceding paragraphs of this Complaint.

48.     Crye enjoys exclusive rights with respect to the Works, including the exclusive right to copy, reproduce, distribute, display, and create derivative works based on the same.

49.     Tacticon had direct access to the Works through Crye's or its licensees' public use and/or sale of genuine MultiCam® products and their renown in the international marketplace.

50.     Tacticon has and continues to copy, reproduce, distribute, and/or publicly display infringing copies of the Works without Crye's consent or authorization, in violation of 17 U.S.C. § 106. The content of Tacticon's Infringing Products is substantially similar to the Works.

51.     On information and belief, Tacticon's infringement of Crye's copyrights in MultiCam® and MultiCam® Black is deliberate, willful and in utter disregard of Crye's rights.

52.     As a direct and proximate result of Tacticon's infringement of Crye's copyrights, Crye is entitled to damages in an amount to be determined at trial, which is not currently ascertainable.

53.     Alternatively, at its election, Crye is entitled to the maximum allowable amount of statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

54.     Crye is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

55.     Tacticon's actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to Crye for which Crye has no adequate remedy at law. Crye is therefore entitled to a preliminary and permanent injunction enjoining and restraining Tacticon from reproducing, distributing, display, or other use of the MultiCam® and MultiCam® Black designs

or any other design that is substantially similar thereto or derivative thereof.

### SECOND CLAIM FOR RELIEF
### (Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114)

56.     Crye realleges and incorporates herein the allegations set forth in the preceding paragraphs of this Complaint.

57.     Crye possesses valid and enforceable rights in the Marks in connection with all of the goods at issue in this case by virtue of its extensive use, registration, promotion, and advertisement of the Marks, and has possessed such rights at all times material hereto.

58.     Tacticon's unauthorized use of the Counterfeit Mark in connection with importing, exporting, distribution, sale, offering for sale, marketing, and advertising its Infringing Products bearing the Infringing Patterns constitutes a use in commerce that is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval by Crye of Tacticon's goods, services, or commercial activities, thereby enabling Tacticon to benefit unfairly from Crye's reputation and success.

59.     Tacticon's actions constitute trademark infringement, unfair competition and false designation of origin in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60.     Tacticon's infringement has been and continues to be intentional, willful, and without regard to Crye's rights in the Marks.

61.     Crye has sustained damages as a direct and proximate result of Tacticon's infringement of the Marks in an amount to be proven at trial.

62.     On information and belief, Tacticon has gained profits by virtue of its infringement of the Marks.

63.     Tacticon's actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to Crye for which Crye has no adequate remedy at law. Crye is therefore

entitled to a preliminary and permanent injunction enjoining and restraining Tacticon from use of the Marks or any other mark that is confusingly similar thereto.

64.    This is an exceptional case for which Crye seeks an award of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**THIRD CLAIM FOR RELIEF**
**(Federal Trademark Counterfeiting, 15 U.S.C. § 1114)**

65.    Crye realleges and incorporates herein the allegations set forth in the preceding paragraphs of this Complaint.

66.    Tacticon has used spurious marks that are identical or substantially indistinguishable from the Marks.

67.    Tacticon is intentionally and willfully using these spurious marks, or acting with willful blindness, knowing they are counterfeit, in connection with the transportation, importation, distribution and offer for sale of the counterfeit Infringing Products for its own financial gain.

68.    Tacticon's unauthorized use of the Marks is likely to cause confusion, deception and mistake among the consuming public and industry as to the source, approval, or sponsorship of the Counterfeit Infringing Products and other products bearing counterfeit and infringing Marks.

69.    Accordingly, Tacticon has engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

70.    As a direct and proximate result of the foregoing acts, Crye has been damaged and has suffered, and will continue to suffer significant damages, in an amount to be determined at trial.

71.    Tacticon's acts entitle Crye to damages for all of Tacticon's profits derived from its past unlawful conduct, trebled to the full extent provided under 15 U.S.C. §§ 1117(a) and (b), or in the alternative to statutory damages under 15 U.S.C. § 1117(c).

72.     Tacticon's actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to Crye for which Crye has no adequate remedy at law. Crye is therefore entitled to a preliminary and permanent injunction enjoining and restraining Tacticon from use of the Marks or any other mark that is confusingly similar thereto.

73.     This is an exceptional case for which Crye seeks an award of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF
### (Federal Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125)

74.     Crye realleges and incorporates herein the allegations set forth in the preceding paragraphs of this Complaint.

75.     Tacticon's actions complained of herein are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Tacticon or Tacticon's products or commercial activities with Crye or Crye's products or services, or as to the origin, sponsorship, or approval of Tacticon's products by Crye.

76.     Tacticon's actions complained of herein constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Tacticon's actions complained of herein have been and continue to be intentional, willful, and made in bad faith.

78.     Crye has sustained and is likely to sustain damages as a direct and proximate result of Tacticon's actions complained of herein.

79.     Tacticon's actions have caused and—unless enjoined by this Court—will continue to cause irreparable injury to Crye for which Crye has no adequate remedy at law. Crye is therefore entitled to a preliminary and permanent injunction enjoining and restraining Tacticon from use of the Marks or any other mark that is confusingly similar thereto.

80.     This is an exceptional case for which Crye seeks an award of its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FIFTH CLAIM FOR RELIEF
### (Trademark Infringement and Unfair Competition in Violation of State Common Law)

81.     Crye realleges and incorporates herein the allegations set forth in the preceding paragraphs of this Complaint.

82.     Tacticon's aforesaid conduct constitutes common law trademark infringement and unfair competition under the common law of the State of New York.

83.     Tacticon's unauthorized use of "Multicam" in connection with importing, exporting, distribution, sale, offering for sale, marketing, and advertising its Infringing Products bearing the Infringing Pattern constitutes a use in commerce that is likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval by Crye of Tacticon's goods, services, or commercial activities among consumers in New York, thereby enabling Tacticon to benefit unfairly from Crye's reputation and success.

84.     Tacticon's activities are false, deceitful, misleading, and in bad faith, and constitute trademark infringement and unfair competition as prohibited by New York common law.

85.     Crye has suffered and will continue to suffer irreparable harm as a result of Tacticon's activities. Unless permanently enjoined, Tacticon will continue to act in the unlawful manner complained of herein, all to Crye's irreparable harm. Crye's remedy at law is not adequate to compensate it for the injuries suffered and threatened. Crye is accordingly entitled to injunctive relief restraining Tacticon from further infringement and unfair competition.

## DEMAND FOR JURY TRIAL

86.     Pursuant to Fed. R. Civ. P. 38, Crye respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Crye requests judgment in favor of Crye and against Tacticon on all counts herein, and an award of the following relief:

1. Enter a declaration that Tacticon has directly and/or indirectly infringed Crye's valid and duly issued copyrights in the Work(s);

2. Enter a declaration that Tacticon has directly and/or indirectly counterfeited and infringed the Marks by using them in commerce in connection with the Infringing Products, bearing the Infringing Patterns;

3. Enter a preliminary and permanent injunction enjoining and prohibiting Tacticon and its officers, directors, employees, agents, affiliates, successors, assigns, licensees, and entities owned or controlled by Tacticon, and all those in privity or acting in concert with them, and each of them who receives notice directly or otherwise of such injunction from:

   a. Manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the Infringing Products, or any products that are substantially similar to the Works, without Crye's express written authorization;

   b. Using in any manner the MultiCam® Marks or brand name, or any trademark or brand name that is otherwise confusingly similar to the Marks, in conjunction with the Infringing Products or any products that are substantially similar to the Works without Crye's express written authorization;

   c. Using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and to deceive

20

members of the trade and the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Tacticon with Plaintiff, and as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Tacticon and Tacticon's commercial activities by Crye;

d.  Engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the use of, advertising and dealing in any infringing or counterfeit products including the Infringing Products;

e.  Secreting, destroying, altering, removing, or otherwise dealing with the Infringing Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and otherwise dealing in the infringing or counterfeit products including the Infringing Products;

f.  Secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and dealing with: (i) the Infringing Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Tacticon's websites or apps or any money, securities or other property or assets of Tacticon (whether said assets are located in the U.S. or abroad) ("Tacticon's Assets") from or to financial accounts associated with or

utilized by Tacticon in the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and sale of infringing or counterfeit products including the Infringing Products; and

g. Assisting, aiding, abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs 3(a) through 3(f) above.

4. Order requiring that Tacticon recall from any distributors and retailers and deliver up to Crye for destruction any infringing or counterfeit products including the Infringing Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Crye's trademarks or other rights including, without limitation, the Marks, or bear any marks or incorporate any works that are confusingly or substantially similar to the Marks;

5. Order that Tacticon be required to deliver up for destruction all materials in their possession, custody or control, or the possession, custody or control of any of their agents, distributors, and representatives, embodying or displaying the Works, including without limitation all unsold inventory of Infringing Products, and all pictures, promotional materials, and any and all packaging, labels, tags, advertising and promotional materials, online materials, and any other materials;

6. Order Tacticon to file with the Court and serve on Crye's counsel within 30 days after issuance of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Tacticon has complied with the injunction;

7. Order that Tacticon be required to supply Crye with a complete list of entities from

whom they purchased and to whom they distributed and/or sold products bearing the Infringing Patterns;

8.     Order an accounting and disgorgement of Tacticon's profits, gains, and advantages realized from its manufacturing, importing, exporting, distributing, advertising, marketing, promoting, offering for sale, selling, and otherwise dealing in Infringing Products as described herein, including a reconciliation of all purchases and sales of the infringing products with documents relating to all such purchases and sales;

9.     Order that Tacticon pays Crye its actual damages, plus the amount of Tacticon's profits attributable to the conduct alleged herein pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 504(b), and other applicable law;

10.     Order that Tacticon pays Crye's treble damages in the amount of a sum equal to three (3) times Tacticon's profits or damages sustained by Crye, whichever is greater, pursuant to 15 U.S.C. § 1117(b);

11.     Order that, in the alternative to Crye's actual damages and Tacticon's profits, Tacticon pays Crye statutory damages for willful copyright infringement in the amount of $150,000 per Work as authorized by 17 U.S.C. § 504(c);

12.     Order that, in the alternative to Crye's actual damages and Tacticon's profits, Tacticon pays Crye statutory damages for willful counterfeiting in the amount of $2,000,000 per Mark per type of good as authorized by 15 U.S.C. § 1117(c);

13.     Order that Tacticon pays Crye enhanced damages as provided by 15 U.S.C. § 1117 and other applicable law;

14.     Order that Tacticon pays Crye damages to be proven at trial for common law trademark infringement and unfair competition;

15.     Order that Tacticon pays Crye, as the prevailing party, reasonable attorneys' fees, costs, and expenses pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, and other applicable law;

16.     Order that Tacticon pays Crye pre-judgment and post-judgment interest on Crye's damages at the applicable rate;

17.     Grant such other and further relief as is just and proper.

Dated: June 15, 2023

GREENBERG TRAURIG LLP

*/s/ Justin A. MacLean*
Robert A. Horowitz
horowitzr@gtlaw.com
Justin A. MacLean
Justin.MacLean@gtlaw.com
Giancarlo L. Scaccia
scacciag@gtlaw.com
One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Plaintiff Crye Precision LLC*
